TYLER BUILDING & LOAN ASS'N v. BAIRD & SCALES.

(Court of Civil Appeals of Texas. Dallas. March 21, 1914. Rehearing Denied April 11, 1914.)

1. VENDOR AND PURCHASER (§ 239*)—ESSENTIALS—INTENT OF GRANTOR.

To pass title a deed must be delivered with grantor's consent that it shall operate to pass title, and a deed coming into grantee's possession without grantor's assent, given with the intention that it shall operate as a conveyance, will not pass title even as against an innocent purchaser for value from the grantee, and without notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 583–600; Dec. Dig. § 239.*]

2. ESCROWS (§ 14*)—FRAUDULENT DELIVERY.

Where one, in whose possession plaintiff placed a deed for safe-keeping and for delivery after plaintiff had inspected some goods, for which it was to convey the land, fraudulently delivered the deed before the goods were inspected, plaintiff was not bound by the deed holder's acts, and the delivery was not effectual to pass title.

[Ed. Note.—For other cases, see Escrows, Cent. Dig. §§ 17–20; Dec. Dig. § 14.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by the Tyler Building & Loan Association against Baird & Scales. From a judgment dismissing the petition, plaintiff appeals. Affirmed.

Lively, Nelmes & Adams, of Dallas, and Lasseter & McIlwaine, of Tyler, for appellant. Lawther & Pope, of Dallas, for appellees.

RAINEY, C. J. This suit was brought by appellant against appellees to recover damages for the value of certain lands alleged to have been listed by appellant; said damage having been occasioned by the fraud of appellees as agents of appellant.

General and special demurrers to the petition were sustained, and, appellant having refused to amend, the cause was dismissed, and from this action of the court this appeal is taken.

The allegations of the plaintiff's petition are:

"(1) That plaintiff, Tyler Building & Loan Association, is a private corporation, created, organized, and existing under and by virtue of the laws of the state of Texas, with its principal office and place of business located in the city of Tyler, county of Smith, and state of Texas, and that John Durst, who resides in said city, county, and state, is its president and general manager. That the defendants, J. V. Baird and H. L. Scales, composing the firm of Baird & Scales, as aforesaid, each reside in the city of Dallas, county of Dallas, and state of Texas, but the defendant H. L. Scales is now temporarily in the city of New York, county and state of New York, and for cause of action plaintiff alleges:

"(2) That plaintiff is a private corporation created, organized, and existing under and by virtue of the laws of the state of Texas for the purpose of buying and selling real estate, including trading and exchanging lands for money, other lands, or property, the erection, renting, or leasing of buildings, and the loan of money for the mutual benefit of its members, and was engaged in such business during the year 1909. That the defendants are now and were during the year 1909 engaged in the real estate business in the city of Dallas, and, as such real estate agents and dealers, are now and were during said year 1909 engaged in the business of buying, selling, trading, and exchanging real estate and other properties for themselves and for others, for hire or compensation. That on or about the 31st day of March, A. D. 1909, said defendants were so engaged in said business, and on or about said date represented to plaintiff that they had established agencies in most every state in the American Union, consisting of live, energetic men, through which agencies they were in position to make for their clients large profits on properties turned over to them for trade or exchange. That on or about said date, and subsequent thereto, plaintiff was the owner of and in possession of 2,888 acres of land in Angelina county, Tex., on the Vincenti Michelli grant in said county, described as follows, to wit: (Here the land is described:) And out of the above-described 1,843.5 acres there was sold to Wyndham Robertson 437 acres, undivided interest, as per deed, dated October 26, 1899, recorded in Cherokee County Deed Records Book 17, p. 345, leaving a net balance of 1,406.5 acres, which is hereby

conveyed and fully shown on plat hereto attached and made a part of this deed, and marked 'Exhibit A,' Plat of the M. del Carmel Leigo League, Cherokee County, Texas, showing subdivision, which said land was on said date, and is now, reasonably worth a sum of $6 per acre, or a total of $9,139. That the legal title to said last above-named tract of land was at the time of the negotiations, hereinafter set out, in the name of the estate of Mrs. Susan W. Thorn, deceased, of which said estate John Durst was independent executor, but the land in truth and in fact belonged to plaintiff; the same having been bought and paid for by plaintiff, but title thereto never having been conveyed to it. That plaintiff, desiring to sell or dispose of said land, listed same with defendants, for the purpose of being sold or traded, agreeing to pay them reasonable compensation for their services in the event they secured a purchaser suitable to plaintiff, and for a consideration satisfactory to plaintiff. That plaintiff listed its said lands with defendants on or about the 1st day of April, A. D. 1909, for disposition either by sale or trade, in the event suitable purchaser or purchasers could be found who would pay a consideration satisfactory to plaintiff for same, and agreed to pay to defendants, in the event they disposed of said land, a reasonable compensation for their services. That from said date up to the 18th day of September, A. D. 1909, said defendants submitted plaintiff various and sundry propositions of trade for said lands, none of which were acceptable to plaintiff. That among said propositions to trade so submitted to plaintiff by defendants were several offers to trade said lands for stocks of dry goods, none of which propositions were satisfactory or acceptable to plaintiff. That on or about the 7th day of September, A. D. 1909, the defendants represented to plaintiff that they could trade said two tracts of land to Kansas City parties at $15 per acre for stocks of general dry goods consisting of clothing, shoes, boots, hats, dresses, etc. That plaintiff advised defendants that it would be willing to trade for such a stock of general dry goods as above described, provided the stock was all right and the goods not damaged, said goods to be traded for to be submitted to inspection by plaintiff, and checking of inventory of same. That defendants represented to plaintiff that said stock of dry goods was a first-class stock of dry goods in every respect, and could be easily handled for cash. That in the negotiations by and between plaintiff and defendants regarding said stock of dry goods, defendant often used the general term 'merchandise,' meaning thereby stock of general dry goods consisting of clothing, hats, dresses, boots, shoes, etc., and not a stock of general merchandise. That it was in contemplation of the parties hereto at all times that, in the event said lands were traded for merchandise, it was to be a general stock of dry goods. That thereafter, to wit, on or about the 18th day of September, A. D. 1909, the defendant J. V. Baird, just a day or two after representing to plaintiff that he could trade two tracts of land to Kansas City parties for a general stock of dry goods consisting of clothing, dresses, hats, boots, shoes, etc., as heretofore described, went to Kansas City, and from Kansas City represented to plaintiff that they had been offered for said two tracts of land $60,000 in merchandise, that the defendants, acting by and through the defendant J. V. Baird, represented to plaintiff that he, the said Baird, had had 20 years' experience in the dry goods business, that he had examined and handled over 200 stocks of dry goods, and was thoroughly acquainted with the character and quality of dry goods and the value thereof. That plaintiff, relying upon the truthfulness of the said Baird's representations that he had had 20 years' experience in the dry goods business and that he was thoroughly acquainted and competent to pass upon stocks of general dry goods as to the kind and quality and as to the price thereof, authorized the defendants to go to Kansas City to negotiate a deal of said lands for such a stock of general dry goods as he had represented to plaintiff he could trade said lands for, but did not authorize defendant to enter negotiations to trade said lands for any other kind or character of said goods. That defendants, as hereinbefore alleged, prior to the time the said Baird went to Kansas City, had represented to plaintiff that said general stock of dry goods consisted of boots, shoes, hats, dresses, etc., and was such a stock of goods as could be easily converted into cash. That plaintiff, upon receipt of the representations of said defendant from Kansas City that he could trade for a $60,000 stock of merchandise for said two tracts of land, believed and relied upon the representations of the said defendants, acting by and through the said J. V. Baird, that said merchandise was the stock of general dry goods, such as the said defendants had represented to plaintiff it could trade said lands for, and was such a stock as plaintiff had authorized the defendants to enter negotiations looking to the exchange of same for said land. That, immediately after the said Baird entered into or attempted to enter into said contract on behalf of plaintiff with the said Mitchell Dry Goods Company for the exchange of said $60,000 stock of merchandise for said two tracts of land, the defendant Baird returned to Texas, and after his return studiously concealed the true character and quality of said stock of merchandise, but represented to plaintiff that he had traded for such a stock of general dry goods as he had represented he would trade for, that is, a general stock of dry goods consisting of clothing, hats, dresses, boots, shoes, etc., which stock inventoried at cost price the sum of $60,000, subject to plaintiff inspecting said

goods and checking the inventory thereof, and very strenuously and urgently recommended to plaintiff that he accept said trade and close same immediately. That the defendants, acting by and through the said J. V. Baird, represented to plaintiff, as hereinbefore alleged, that he, the said Baird, had had 20 years' experience in the dry goods business, that he had examined between $20,-000 and $30,000 worth of the stock of goods offered, and that it was a first-class stock of general dry goods in every particular, and that same consisted of clothing, dresses, hats, boots, shoes, etc., and such other goods as are usually and customarily carried in dry goods stores. Said defendant further represented to plaintiff that the remainder of the stock to make up the $60,000 was to be taken from the store of the Mitchell Dry Goods Company in Kansas City, Mo., a concern doing a large business in said city, and was to be as good or a better class of goods than the stock examined by him. That plaintiff, believing the statements made by defendants to be true, and relying on their representations, authorized them to proceed with closing said deal for the exchange of said goods for said lands; said trade to be made subject to examination of the goods and checking of the inventory of same by plaintiff. That in pursuance of said trade as represented to it by defendants, plaintiff prepared, executed, and acknowledged, and caused to be prepared, executed, and acknowledged, deeds for the lands in question, conveying same by warranty title to one B. W. Pope, the party designated by said defendants, and turned said deeds over to defendants for safe-keeping, to be delivered when plaintiff had inspected and examined said stock of goods and checked the inventory thereof. That said deeds were so turned over to defendants by plaintiff on or about the 23d day of October, 1909. That from the time the said Baird returned from Kansas City up to the said 23d day of October, 1909, the said defendants had studiously and diligently represented to plaintiff that said stock of goods so traded for was a first-class stock of general dry goods consisting of clothing, dresses, boots, shoes, hats, etc., and had strenuously and diligently concealed from plaintiff the true character of said stock of goods. That the defendants had, up to said time, failed and refused to furnish to plaintiff a copy of the contract that they had entered into on behalf of plaintiff with said Mitchell Dry Goods Company, and had failed and refused to furnish to said plaintiff an inventory of said stock of goods, and plaintiff at the time it left said deeds with the said defendants believed and relied on their representations that it was to get the kind and character of goods represented by defendants that it would receive for said land. That plaintiff on the 23d day of October, A. D. 1909, relying on defendants' representations that they had traded for said stock of general dry goods subject to plaintiff's inspection of same and the checking of the inventory thereof, procured the services of an expert and experienced dry goods man to go to Kansas City and inspect said stock of dry goods and to check the inventory thereof, and said expert went to Kansas City in compliance with plaintiff's request, arriving there on the 25th day of October, 1909. That on the same day defendants, knowing that plaintiff had procured the services of said expert dry goods man to examine said stock, and knowing that he had not examined nor had an opportunity to examine same, in utter and willful disregard of plaintiff's rights, and in violation of their authority, and against plaintiff's directions and instructions, turned over and delivered said deeds to the Mitchell Dry Goods Company, the beneficiary in said trade, and without plaintiff's knowledge, consent, or authority, but with full knowledge of the fact that plaintiff had sent an expert dry goods man from Texas to Kansas City to inspect said goods and check the inventory thereof, appointed one Ernest Lovan to act for it in accepting to stock of merchandise. That the said Ernest Lovan was the party who had, through all the negotiations, and who was at that time representing the said Mitchell Dry Goods Company as its agent, which fact defendants well knew, for the reason that all of their negotiations on behalf of plaintiff with said Mitchell Dry Goods Company had been made by and with the said Lovan.

"Plaintiff alleges: That it turned over its said deeds to the said defendants on the 23d day of October, A. D. 1909, and that on the same day defendants took the first fast train out of Dallas, Tex., for Kansas City, and, as soon as they could reach the office of the Mitchell Dry Goods Company after arriving in Kansas City, delivered plaintiff's deeds to it, well knowing at the time that plaintiff's dry goods man whom it had employed to go to Kansas City to inspect and examine said goods and check the inventory, therefor, had not examined any of said goods or checked the inventory, if he had in fact even had time to reach the house where the said goods were located; that, immediately upon receiving said deeds, said dry goods company caused said land to be conveyed to an innocent purchaser for value without any notice; that, as hereinbefore alleged, defendants had from the date of their return from Kansas City, up to the time said deeds were turned over to them, studiously and diligently deceived plaintiff as to the true character and value of said stock of goods, and used all the devises and representations within their power to induce plaintiff to forego inquiry into the true quality and value of said stock of merchandise.

"Plaintiff would further show to the court: That the stock of goods which defendants received for its lands was not a stock of general dry goods consisting of boots, shoes,

dresses, hats, clothing, etc., such as was·represented to it to be, but that the majority of said stock consisted of cheap and worthless jewelry, notions, etc. That in said stock inventory $60,000 there was about $30,000 worth of cheap and worthless jewelry consisting of neck chains, breastpins, collar buttons, and trinkets of like kind and character, all of which were practically worthless; and $93.95 worth of ladies' waists. That in said stock there was millinery goods consisting of hats, braids, belting, etc., amounting to over $6,000, while the shoes in said stock amounted to $371. There was in said stock goods cheap and worthless buttons inventorying over $2,500, and piece goods inventorying only $165. That there was $6,295.11 of ladies' neck chains and $53.17 of hosiery and underwear. That said stock did not contain the boots, ·shoes, clothing, hats, dresses, etc., as defendants had represented to plaintiff it did contain; but same was, as hereinbefore alleged, made up of neck chains, stickpins, brooches, breastpins, braids, and trinkets of like kind and character, all of which are, and were at the time ·plaintiff traded for same, or attempted to trade for same, practically worthless. That plaintiff never did at any time authorize its lands to be traded for any such stock of goods, has never agreed to accept the same for its lands, nor did it authorize or ratify defendants' attempted acceptance for it. Plaintiff further alleged that the defendants knew, or by the exercise of ordinary care and diligence could have known, that plaintiff did not trade for any such stock of goods as was tendered to it; but, notwithstanding this fact, defendant negligently, carelessly, and fraudulently delivered plaintiff's deeds to the said Mitchell Dry Goods Company without seeing or attempting to see that plaintiff received the goods for· which said defendants agreed to exchange said land.

"Plaintiff further alleges that the defendants by reason of their fraudulent acts and conduct intended to and did rob, cheat, and defraud plaintiff out of its land without paying value therefor, and, in furtherance of such attempt to so defraud plaintiff, said defendants delivered plaintiff's said deeds to said Mitchell Dry Goods Company, without plaintiff's knowledge, consent, or authority, and against its express direction, and without any authority from plaintiff attempted to appoint the said Lovan, the agent of the Mitchell Dry Goods Company, the beneficiary in said trade, to represent the plaintiff in receiving said stock of goods; that by reason of said fraudulent acts on the part of defendants in turning over and delivering its deeds as aforesaid, without its authority, and by reason of their negligence and carelessness in not seeing that plaintiff received the stock of goods it was to receive in exchange for said lands, they have deprived plaintiff of its land, without compensating it there-

165 S.W.—35

for, which land plaintiff alleges to be worth $27,811, for which amount it asks judgment.; that plaintiff has demanded of defendants and of the said Mitchell Dry· Goods Company a return of the deeds to its said land, which demand has been and is still refused.

"(3) Plaintiff further alleges: That by reason of defendants' willful violation of their duty in delivering its deeds as aforesaid, and depriving it of its said land, it has been compelled to and has gone to considerable expense in an effort to regain its said lands, or value therefor, in the way of traveling expenses, attorney's fees, telegrams, and telephone calls, etc., to the amount of $2,500. That it has been compelled to employ attorneys at an expense of $1,500 and pay their expenses in attending to said litigation in the sum of $500; and that plaintiff has paid out in other expenses in traveling expenses, telegrams, telephones, hotel bills, etc., the sum of $500, aggregating the sum·of $2,500—all of which items of expenses were' brought' about and made necessary by defendants' utter disregard of plaintiff's rights and will-·ful violation of their authority. That but for defendants' acts in the premises plaintiff would not have had to expend said amounts, but same are necessary by reason of and as the direct result of the acts hereinbefore complained of on the part of the defendants. Wherefore it prays judgment for said sum of $2,500 to cover said expenses.

"(4) Wherefore, premises considered, plaintiff prays for process according to law, and upon final trial hereof that it have judgment against said defendants, both jointly and severally, for the value of its land, to wit, the sum of $27,911, for its damages in the way of expenses in the sum of $2,500, making a total of $30,411, together with 6 per cent. interest thereon from the 25th day of October, A. D. 1909, for all costs of suit, and for such other and further relief, both general and special, as it may be entitled to receive, by reason of the above-stated facts, and in duty bound will ever pray."

The appellant complains of the sustaining of the general demurrer, and of the special demurrer, which reads: "Further answering, the said defendants, by their attorneys, come and say that the said plaintiff's first amended original petition is insufficient in law, because it appears from the allegations therein contained that the deeds· to the land which the plaintiff caused to be prepared, executed, and acknowledged, conveying said land by warranty deed to one B. W. Pope, were delivered to these defendants for safekeeping to be delivered to the grantee when, and not until, the plaintiff had inspected and examined said stock of goods and checked the inventory therefor; that afterwards these defendants, without the consent, knowledge, or authority of said plaintiff, and in violation of plaintiff's authority, and against their express directions and instructions, and

with fraudulent intent, and in pursuance of a conspiracy entered into by and between these defendants and Mitchell Dry Goods Company to rob, cheat, and defraud the plaintiff out of its lands, delivered said plaintiff's deeds to the said Mitchell Dry Goods Company. Wherefore, because from the aforesaid allegations it appears that said deeds were delivered by plaintiff to these defendants in escrow, and that these defendants, with fraudulent intent and in pursuance of a conspiracy with the Mitchell Dry Goods Company to defraud and cheat the plaintiff, and without the plaintiff's knowledge, consent, or authority and against its express direction, delivered the said deeds to the said Mitchell Dry Goods Company, the real beneficiary in said deeds, it appears from the allegations in the said plaintiff's first amended original petition that the title to said lands did not pass from it by the delivery of said deeds by these defendants to the said Mitchell Dry Goods Company; that there has been no transfer of title from the plaintiff to the property named as guaranteed in said deeds; and that the title to the lands described in the plaintiff's petition is still in the plaintiff, by reason whereof the said plaintiff is not entitled to recover the value of said lands from these defendants, and of this these defendants pray the judgment of the court."

The damages sought to be recovered is based upon the theory that plaintiff had lost its land by the fraudulent delivery of a deed executed by it conveying said land, by its agent Baird, one of the defendants. It is alleged that plaintiff had agreed with Mitchchell Dry Goods Company to exchange said land for a certain stock of dry goods, and in pursuance thereof it had executed a deed of conveyance and placed it in the hands of J. V. Baird "for safe-keeping, with the express direction not to deliver the same to the dry goods company until it had had the stock of goods inspected and the inventory checked"; and that Baird, "disregarding its said express directions, and without its knowledge, consent, or authority, having turned over its deeds to the dry goods company before it had made its inspection and checked the inventory as agreed, that thereby it was robbed of its lands."

There is no allegation that plaintiff had been dispossessed of the land, or that the stock of dry goods had ever been delivered to it, nor that it can be deprived of its land without its consent. It is shown that the deed was placed in escrow to be delivered to the dry goods company upon the happening of certain conditions, which never took place.

[1] To pass title to land the conveyance must be in writing and a delivery thereof must be made with the consent of the grantor, and with the intention on the grantor's part that it shall operate as a conveyance of the title. The allegations of the petition show that there was no legal delivery of the deed, and therefore no legal title passed to the dry goods company, and we cannot see how the dry goods company can pass title to an innocent purchaser. We agree with appellee; the law is that "a deed which comes into possession of the grantee without assent of the grantor and without his intention that the same shall operate as a conveyance is ineffectual to pass the title to the property which it purports to convey, even as against an innocent purchaser for value and without notice." Spotts v. Whitaker (Civ. App.) 157 S. W. 424; Houston Land & Trust Co. v. Hubbard, 37 Tex. Civ. App. 546, 85 S. W. 474; King v. Hill (Civ. App.) 75 S. W. 551; Steffian v. Bank, 69 Tex. 513–519, 6 S. W. 823; Everts v. Agnes, 4 Wis. 356, 65 Am. Dec. 314; Harkreader v. Clayton, 56 Miss. 383, 31 Am. Rep. 369.

The appellant contends, in effect, that Baird was its agent, and, so being, it cannot be heard as against an innocent purchaser to take advantage of Baird disobeying instructions in regard to a delivery of the deed.

[2] The petition alleges fraud on the part of Baird in delivering the deed, and therefore he was not acting as appellant's agent, and it is not bound by his acts, and the matter stands as though no delivery was made. Association v. Parham, 80 Tex. 518, 16 S. W. 316.

We think in the particular named the petition does not show a right of recovery for the value of the land, and the judgment is affirmed.