KING et al. v. DIFFEY et al.　(No. 8338.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 2, 1916. On Motion for Rehearing, Jan. 6, 1917.)

1. DEEDS ⟨◯⟩211(3)—DELIVERY OBTAINED BY FRAUD—EVIDENCE.

Evidence held to sustain findings that defendant fraudulently induced plaintiff husband to surrender deed to property owned by wife in exchange for stock of goods.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 644, 645; Dec. Dig. ⟨◯⟩211(3).]

2. VENDOR AND PURCHASER ⟨◯⟩239(9)—BONA FIDE PURCHASER—FRAUD.

Where defendant induced plaintiff husband to surrender deed to property owned by wife, upon false representations and under materially different terms from those previously assented to by the wife and without her authority, such deed conveyed no title, which the grantee could convey to a bona fide purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 595; Dec. Dig. ⟨◯⟩ 239(9).]

3. VENDOR AND PURCHASER ⟨◯⟩239(9)—"BONA FIDE PURCHASER"—RIGHTS ACQUIRED.

To enable one to claim as a "bona fide purchaser" without notice, the title purchased must be apparently perfect, legal, and regularly conveyed, and where the deed is void, one who purchases from the grantee gets no title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 595; Dec. Dig. ⟨◯⟩ 239(9).

For other definitions, see Words and Phrases, First and Second Series, Bona Fide Purchaser.]

4. VENDOR AND PURCHASER ⟨◯⟩239(9)—BONA FIDE PURCHASER—RIGHTS ACQUIRED.

As a general rule a bona fide purchaser without notice from a grantee who has received no valid delivery of his deed acquires no title as against the grantor, unless by estoppel.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 595; Dec. Dig. ⟨◯⟩ 239(9).]

5. CANCELLATION OF INSTRUMENTS ⟨◯⟩52 — SUIT TO CANCEL—ESTOPPEL—FINDINGS.

In a suit to cancel deeds, findings of court held not to authorize the conclusion that plaintiff was estopped from claiming invalidity of deeds as against one claiming as a bona fide purchaser from the grantee.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 107; Dec. Dig. ⟨◯⟩ 52.]

6. DEEDS ⟨◯⟩26, 56(5)—REQUISITES OF.

To pass title to lands the conveyance must be in writing, and a delivery made with the

grantor's consent, and a deed obtained by fraud, is wholly insufficient to pass title.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 50–52; Dec. Dig. ☞26, 56(5).]

7. DEEDS ☞208(1) — SUIT TO CANCEL — EVIDENCE.

In a suit to cancel deeds, evidence *held* to show that the plaintiff wife never consented to delivery of deeds by her husband under materially different terms than those she had previously assented to.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625, 630; Dec. Dig. ☞208(1).]

On Motion for Rehearing.

8. APPEAL AND ERROR ☞832(1)—REHEARING —INACCURATE FINDING.

The inaccuracy, if any, of a statement in the appellate court's finding that parties entered "into a written contract" on a certain date was not ground for rehearing, where the evidence shows that the agreement mentioned was actually made in terms set forth in the instrument reduced to writing on that date.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3215–3218, 3220, 3223–3225; Dec. Dig. ☞832(1).]

Appeal from District Court, Clay County; J. W. Akin, Judge.

Suit by Laura V. Diffey and another against E. G. King and others. Judgment for plaintiffs, and defendants appeal. Affirmed, and rehearing denied.

Wantland & Parrish, of Henrietta, and W. R. Booth, of Ft. Worth, for appellants. J. A. Templeton, of Ft. Worth, for appellees.

CONNER, C. J. As finally presented this suit is one by Laura V. Diffey, joined by her husband, J. B. Diffey, to cancel, on the ground of fraud, a deed from the plaintiffs to E. E. King, Jr., and a trust deed executed by said E. E. King in favor of the Collin County National Bank, Y. T. Manning, and C. E. Lewis. The facts out of which the controversy arises are, substantially, as follows:

Laura V. Diffey and her husband, J. B. Diffey, occupied as their homestead lot 11, block 15, of the old town of Henrietta, Clay county, and known as the "Imperial Hotel," which was conducted by the plaintiffs, and which was the sole and separate property of Mrs. Diffey. On the 27th day of May, 1913, E. E. King and the plaintiffs entered into a written agreement for an exchange of said hotel property of an agreed value of $15,000, for a certain stock of dry goods owned by King and situated at Anna in Collin county. The contract provided that the stock of goods was to be free of debt, invoiced "at the marked cost price," if any, etc., and that if the total value of the stock of goods was not sufficient to pay said $15,000, the said King was to execute his promissory notes for the remainder secured by a vendor's lien upon the property. There were some other details relating to the agreement not material to notice. Upon the execution of the contract referred to, Mrs. Diffey, joined by her husband, executed a conveyance to said

E. E. King to said lot 11, and J. B. Diffey, the husband, took the same and retained it in his possession and went to Anna in Collin county to invoice the stock of goods. Upon arrival at Anna, King expressed dissatisfaction with the contract as it had been reduced to writing in Henrietta, and induced J. B. Diffey to enter into another and a different contract in writing. Whereupon the invoice proceeded in accordance with the new contract, and it was found that the value of the stock of goods as thus ascertained exceeded the value of the hotel property as had been agreed upon. Before the invoice prices, however, had been aggregated, King induced J. B. Diffey to cause the delivery of the deed to the hotel property, which he at once forwarded and caused to be duly recorded in Clay county. J. B. Diffey at the same time over the telephone directed his wife to deliver the hotel property to an agent of King, which was done on Saturday, June 1, 1913.

On June 4th, thereafter, Mrs. Diffey went to Anna and saw the stock of goods for the first time, and she testified that she at once knew they had been swindled, and at once began an effort to induce the cancellation of the deed. Mrs. Diffey testified that this was consented to, but in fact it appears that King negotiated a loan from the Collin County National Bank at Anna, executing his note therefor in the sum of $3,000, signed by E. E. King, as principal, and by Y. T. Manning and C. E. Lewis, as sureties. The bank declined to make the loan or accept the note unless it was secured by a trust deed upon the Henrietta property, which was thereupon duly executed by E. E. King, Jr., and also forwarded to Henrietta for record. Upon notification of the record of the trust deed at Henrietta, which, as shown by the clerk's indorsement, was about 8 o'clock a. m. of the 16th day of June, 1913, the bank accepted the note of King, and placed to his credit on the books of the bank the sum of $3,000. On the same day, however, the plaintiffs filed their suit to cancel the deed made by them conveying the said lot 11, they at that time not knowing of the execution of the trust deed; the parties claiming under this instrument having later been made parties defendant. Upon the filing of the plaintiffs' suit they caused to be duly recorded notice thereof under our lis pendens statute. See 4 Vernon's Sayles' Texas Civil Statutes, art. 6837. This lis pendens notice was filed at 11:30 a. m. on said 16th day of June, 1913, some 3½ hours after the filing of the trust deed. The proof shows that while a credit of $3,000 had been entered upon the books of the Collin County National Bank at the time of its acceptance of the note of King and Manning and Lewis, no money was paid out until the following day, June 17, 1913, upon which day one or more checks drawn by E. E. King, Jr., were paid and subsequently

thereto the full amount of $3,000 was paid out upon his checks; these payments all having been made without any actual notice on the part of the bank of the institution or pendency of the plaintiffs' suit.

The case was tried before a jury and submitted upon special issues. The issues are numerous, but we think it will be sufficient to say that the jury found, in substance, that the material allegations of the plaintiffs' petition of fraud on the part of the Kings were true, and that the new contract above mentioned executed by King and J. B. Diffey at Anna was materially different from the original contract executed at Henrietta by Mrs. Diffey and her husband; that Mrs. Diffey did not know and was not informed of these material changes; that J. B. Diffey was induced by false representations to deliver the deed that had been executed by himself and wife to King; and that he so made delivery upon the changed contract without authority from his wife, Laura V. Diffey. Other findings are in harmony with the facts as we have before stated them, and the court upon the incoming of the verdict entered up a judgment in favor of the plaintiffs as against all defendants, canceling the several conveyances mentioned, and the defendants have appealed.

Some of us are inclined to the view that, under the operation of the lis pendens notice provided for in the statute, the appellant bank at least is not in the position of an innocent purchaser for value, and as such entitled as against the plaintiffs to protection; the bank in fact not having actually paid money out upon the note executed by King, Manning, and Lewis before the filing of the lis pendens notice, though, perhaps, it cannot be so clearly said as to the appellants Lewis and Manning; there being evidence tending to show that these parties became sureties upon the note without notice of the fraud of King, or of the pendency of the plaintiffs' suit prior to the time they became bound as sureties. However, the record is not in a favorable condition for the determination of the sureties' rights, inasmuch as the surety Manning, while he pleaded want of notice of the fraud of the Kings and of the pendency of the suit, secured no finding of the jury in his favor on that issue. He requested an instruction to elicit such a finding, but it was refused, and we have no exception to the court's action in refusing to submit it, nor has he an assignment of error which, as we think, seems to properly enable us to determine his precise right arising from such want of notice. The appellant Lewis sought and secured a finding in his favor on the issue presented in his pleadings that he was without notice of the fraud or of the suit, but we find no assignment urging a reversal of the judgment in his behalf which seems to authorize a consideration of his right: said sureties having contented themselves with an adoption of the brief of the appellant bank, which seems only to present questions relating to the bank's effort to reverse the judgment in its own behalf.

We have therefore concluded to pretermit a discussion of the rights of the parties as they might arise under the doctrine of lis pendens in view of the fact that we have all agreed that the judgment must be affirmed upon another ground.

[1, 2] As stated, it was found, in effect, by the jury, as alleged by the plaintiffs, that King secured the delivery of the deed to the hotel property by means of false representations and under a contract materially different from that executed by Laura V. Diffey, and that J. B. Diffey so delivered said deed without knowledge on the part of Laura V. Diffey of the material changes that had been made in the original contract, and without authority from her to deliver the deed under the new contract. We are of opinion that the evidence sustains these findings, and that, therefore, no title passed to King by reason of the conveyance to him, and no title being in him at the time of the execution of the trust deed, no right thereunder can be asserted by any of the parties appellant.

[3] As said in 39 Cyc. 1690 (II):

"To enable one to claim the rights of a bona fide purchaser without notice, the title purchased must be apparently perfect, good at law, and made by a regular conveyance. Where the attempt to acquire title wholly fails, and the deed is void, and therefore conveys no title to be transmitted, one who purchases from the person named as grantee in such void deed gets no title to be protected."

[4] The same author on the next page says:

"As a general rule a bona fide purchaser without notice from the grantee named in a deed who had possession thereof, but to whom there had been no valid delivery, acquires no title as against the grantor named in the original deed. * * *"

[5] The rule stated does not apply, of course, where the facts are sufficient to constitute an estoppel against the grantor, but in the case before us we have no findings which authorize the conclusion that Laura V. Diffey is estopped from claiming the invalidity of the deeds under which appellants claim. The texts quoted are fully supported by the decisions.

[6] Thus in the case of Spotts v. Whitaker, by the El Paso Court of Appeals, reported in 157 S. W. 422, it is said:

"A deed, however, is not effective unless it has been delivered into the control of the grantee with the intention on the part of the grantor that it shall become operative, and a deed obtained from its depositary without the consent of the grantor, through the fraud of the grantee, is wholly insufficient to pass title, and parties claiming thereunder as innocent purchasers or incumbrancers will be protected only upon an estoppel based upon a showing that the grantor was guilty of negligence which brought about the unauthorized delivery."

In support of the statements so made the court cites numerous authorities which we

need not set out. In the case of Tyler Building & Loan Ass'n v. Baird & Scales, reported in 165 S. W. 542, the Dallas Court of Appeals said:

"To pass title to land the conveyance must be in writing and a delivery thereof must be made with the consent of the grantor, and with the intention on the grantor's part that it shall operate as a conveyance of the title. The allegations of the petition show that there was no legal delivery of the deed, and therefore no legal title passed to the dry goods company, and we cannot see how the dry goods company can pass title to an innocent purchaser. We agree with appellee; the law is that 'a deed which comes into possession of the grantee without assent of the grantor and without his intention that the same shall operate as a conveyance is ineffectual to pass the title to the property which it purports to convey, even as against an innocent purchaser for value and without notice' "—citing a number of cases.

See, also, Houston Land & Trust Co. v. Hubbard, 85 S. W. 474; Steffian v. Bank, 69 Tex. 513, 6 S. W. 823; Everts v. Agnes, 65 Am. Dec. 314.

[7] The rules so announced seem hardly open to controversy, and under the findings and evidence in this case, we find no sufficient support for a contention that Mrs. Diffey ever consented to an effectual delivery of the deed to King. True, there is evidence tending to show that she knew her husband, to whom the deed had been intrusted for delivery, had or would in fact deliver the deed to the hotel property in Henrietta under a changed contract, but the findings are clearly to the effect that the new contract was materially different from the contract executed by Mrs. Diffey, and clearly to the effect that she was not informed of such material changes, and that her husband was unauthorized by her to deliver the deed except upon terms in substantial compliance with the original contract made by her. It cannot be said, we think, that the evidence fails to support these findings, and we think, therefore, that as against plaintiffs neither appellant secured any right under either the deed to King or under the trust deed executed for the benefit of appellants.

The assignments of error not disposed of by conclusions already stated have been examined, but we find nothing that we think requires discussion or a reversal of the judgment.

The judgment will accordingly be affirmed.

### On Motion for Rehearing.

[8] It is insisted that we were in error in finding that E. E. King and the Diffeys "entered into a written agreement" for the exchange of properties in Henrietta on May 27, 1913; the insistence being that neither finding nor evidence shows that the agreement then and there made was signed by the parties. If it be assumed that it is to be implied from what we said in our original opinion that the Henrietta agreement was actually signed by the respective parties, then to that extent we were in error. The inac-

curacy, however, if any, is wholly immaterial as we view it, for the reason that both the evidence and findings sufficiently show that the agreement mentioned was made in the terms set forth in an instrument then and there reduced to writing. So that the fact that it was not signed cannot materially affect our original conclusion. The essential inquiry in this respect was, Did the parties actually enter into an agreement at Henrietta, whether written or oral, with definite terms, and upon the faith of which Laura V. Diffey executed her deed and authorized its delivery? In all these respects the record leaves no room for doubt, and the findings as a whole abundantly show that the deed was finally delivered by the husband, J. B. Diffey, upon terms materially different from those assented to by the wife.

In all other respects we think what was said in our original opinion sufficiently disposes of the questions reargued in the motion, and, believing that the findings of the jury, when considered as a whole, require the conclusions originally announced, the motion for rehearing is overruled.